**IN THE COURT OF APPEALS OF IOWA**

No. 14-1078
Filed January 27, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**NOELLE COURTNEY YOUNGBEAR,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Tama County, Nancy A. Baumgartner (guilty plea) and Fae E. Hoover-Grinde (sentencing), Judges.

Defendant appeals her convictions for second-degree burglary and two counts of willful injury causing bodily injury. **AFFIRMED.**

Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Tabor, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

Defendant Noelle Youngbear appeals her convictions for second-degree burglary and two counts of willful injury causing bodily injury. There is a sufficient factual basis in the record for Youngbear's guilty pleas to all three charges. The evidence shows Youngbear's guilty pleas were made voluntarily and intelligently. The sentence imposed in this case did not constitute cruel and unusual punishment. We affirm defendant's convictions and sentence.

**I. Background Facts & Proceedings.**

According to the minutes of evidence, on November 3, 2013, at about 4:00 a.m., Merona Jefferson (Merona) and Yolanda Hernandez got into a physical altercation at a birthday party at the home of Barbara Lincoln in Tama County. Merona contacted her friends, Youngbear, Maggi Walker-Morgan, and Brandy Johnson. Gage Tyon stated the women asked him for the location of Hernandez. Tyon stated they "seemed really mad like they wanted revenge or something." Youngbear's boyfriend, Andrew Jefferson, stated he believed the intention of Youngbear, Walker-Morgan, and Johnson "was to confront them," referring to Hernandez and her friends.

The women went to Lincoln's home, where Hernandez was staying. Lincoln's daughter, DeShane Buffalo, stated she heard a knock on the door at about 6:00 a.m. When she and Hernandez went to answer the door, they saw Youngbear, Walker-Morgan, and Johnson already inside the home. A fight ensued involving Youngbear, Walker-Morgan, Johnson, Hernandez, Lincoln, and Buffalo. Buffalo stated Youngbear struck her in the head with a wrench. Buffalo also stated she saw Youngbear hitting Lincoln in the head with a wrench.

Another witness, Hailee Almanza, stated she saw Youngbear strike Lincoln with an object. Buffalo stated she then struck Youngbear in the head with a glass lampshade.[1] Buffalo received a laceration about four inches long on her forehead. Lincoln received a deep laceration about three inches long in the middle of her forehead. Youngbear had a fractured vertebrae in her neck and needed to be life-flighted to Iowa City.

Youngbear, Walker-Morgan, and Johnson were charged with first-degree burglary, two counts of willful injury resulting in serious injury, carrying a concealed weapon, and assault while participating in a felony. Youngbear entered into a plea agreement in which she agreed to plead guilty to burglary in the second degree, in violation of Iowa Code section 713.5(1) (2013), and enter *Alford* pleas[2] to two counts of willful injury causing bodily injury, in violation of section 708.4(2). The State agreed to dismiss the other charges. Under the plea agreement both parties could make sentencing recommendations.

After the plea hearing on May 9, 2014, the district court accepted Youngbear's guilty plea to second-degree burglary and *Alford* pleas to two counts of willful injury causing bodily injury. At the sentencing hearing the State recommended Youngbear serve time in prison but requested concurrent sentences. Defense counsel requested a deferred judgment and probation. Youngbear was sentenced to ten years in prison on the second-degree-burglary

---

[1] According to a police report, Buffalo's statement that she hit Youngbear with a lampshade "did not correspond to the evidence that the lamp reveals," because there was blood on the middle section of the lamp.

[2] In an *Alford* plea, a defendant may "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

charge and five years on each of the willful injury charges, all to be served concurrently. She now appeals her convictions and sentence.

## II. Ineffective Assistance.

**A.** Youngbear contends she received ineffective assistance because defense counsel permitted her to plead guilty when there was not a factual basis for her pleas to second-degree burglary or the two counts of willful injury causing bodily injury.[3]

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A defendant has the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

"It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis." *State v. Finney*, 834 N.W.2d 46, 54 (Iowa 2013). The court should not accept a guilty plea unless there is a factual basis for the plea, including *Alford* pleas. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "Our cases do not require that the district court have before it evidence that the crime was committed beyond a

---

[3] Youngbear raises the claim that the court could not rely on the minutes of evidence in this case because the proposed testimony in the minutes was not in accordance with the deposition testimony of the witnesses. The depositions were never made a part of the record. We do not consider her claims based on evidence outside the record. *See Hughes v. Waters*, 204 N.W.2d 599, 600 (Iowa 1973) ("We must decide the case on the evidence in the trial court.").

reasonable doubt, but only that there be a factual basis to support the charge." *Finney*, 834 N.W.2d at 62.

"On a claim that a plea bargain is invalid because of a lack of accuracy on the factual-basis issue, the entire record before the district court may be examined." *Id.* We consider whether there is an objective factual basis in the entire record available to the court when it accepted the plea. *State v. Sutton*, 853 N.W.2d 284, 286 (Iowa Ct. App. 2014). We may consider (1) the prosecutor's statements, (2) the defendant's statements, (3) the minutes of evidence, and (4) the presentence report, if it was available at the time of the plea. *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014).

**1.** We find there is a sufficient factual basis in the record to support Youngbear's guilty plea for second-degree burglary. During the plea colloquy this exchange occurred:

> THE COURT: And did you enter onto—into an occupied structure—was it a house or was it an apartment? YOUNGBEAR: House.
> THE COURT: House. And when you did so, did you do so without any right, license or privilege to be in the house? In other words, you didn't have any authority to go in? YOUNGBEAR: No.
> THE COURT: And when you entered the property, did you do so with the intent to commit an assault or did the other people with you have the intent to commit an assault? YOUNGBEAR: Is this a yes or no question?
> DEFENSE COUNSEL: Yes.
> THE COURT: Yes. YOUNGBEAR: Yes.
> . . . .
> THE COURT: There were people home? YOUNGBEAR: Yes.

Youngbear's answers established the elements necessary for burglary. *See* Iowa Code § 713.1 (defining burglary as "[a]ny person, having the intent to commit a felony, assault or theft therein, who, having no right, license, or

privilege to do so, enters an occupied structure"). There is additional factual support for the plea in the minutes of evidence. There were several people inside Lincoln's home on the morning of November 3, 2013, making it an occupied structure. Hernandez and Buffalo stated that Youngbear, Walker-Morgan, and Johnson were already inside the home when they went to answer the door, and thus, they entered without the authority to do so. Tyon stated the three women "wanted revenge," and Jefferson stated they had the intention to "confront" the other women, which could support a finding they had the intent to commit an assault. The evidence additionally established the elements of second-degree burglary. *See* Iowa Code § 713.5(1).

**2.** Youngbear entered an *Alford* plea to the charges of willful injury causing bodily injury. "In an *Alford* plea, because the accused is denying his guilt, a factual basis must be established independent of his statements." *Farley v. Glanton*, 280 N.W.2d 411, 416 (Iowa 1979); *see State v. Hansen*, 344 N.W.2d 725, 728 (Iowa Ct. App. 1983). The factual basis may be determined from the minutes of evidence. *State v. Ramirez*, 400 N.W.2d 586, 588 (Iowa 1987) (citing *State v. Townsend*, 238 N.W.2d 351, 355 (Iowa 1976)).

Willful injury is defined as "[a]ny person who does an act which is not justified and which is intended to cause serious injury to another." Iowa Code § 708.4. In a police report attached to the minutes of evidence, Buffalo stated: "I saw my mom and Noelle on the floor and my mom was on top. Noelle had a wrench and was hitting my mom in the head." Also, Almanza stated, "she saw Youngbear strike Barbara with an object." When officers first approached Lincoln she appeared to be intoxicated, but told the officers "she was assaulted by Noelle

who had struck her in the head with a wrench." We conclude there is a factual basis in the record to support Youngbear's guilty plea to willful injury causing bodily injury of Lincoln.

The minutes also show Buffalo stated that as she went downstairs she observed Walker-Morgan punching Hernandez, when out of nowhere "she was struck in the head with a wrench by Noelle." Lincoln told an officer, "Youngbear had struck her daughter [Buffalo] first in the head and then she got between them." An officer reported that based on how deep Buffalo's wound was, it was clear that an object had been used to strike her. We conclude there is a sufficient factual basis in the record to support Youngbear's guilty plea to willful injury causing bodily injury to Buffalo.

**B.** Youngbear claims she received ineffective assistance because her defense counsel "pushed her into pleading guilty with assurances she would receive a deferred sentence and ultimately the charges would be expunged from her record." She states her pleas were not made voluntarily and intelligently.

The record does not support Youngbear's contentions. At the beginning of the plea colloquy, the prosecutor stated he would be recommending concurrent sentences and stated, "Defendant is free to ask for deferred judgments on any and all of the offenses as part of the agreement." The court carefully explained the maximum and minimum penalties for the charges. Youngbear was informed the maximum penalty on the burglary charge was a term of imprisonment not to exceed ten years, while the maximum penalty on the charges of willful injury causing bodily injury was a term of imprisonment not to exceed five years. The court told Youngbear that while she could request a

deferred judgment, "There's no guarantee that that's going to happen." The court told her that if she received consecutive sentences she could be sentenced to twenty years in prison.

After the maximum and minimum penalties were explained, Youngbear continued to enter her pleas. The court then stated, "I find that the Defendant's pleas are voluntarily and intelligently made, with a knowledge of the consequences, and that there is a factual basis for each." Based on the record made during the plea colloquy, we determine Youngbear could not have reasonably believed she was assured of receiving a deferred sentence.

We conclude Youngbear has not shown she received ineffective assistance of counsel.

**III. Sentencing.**

Youngbear asserts her sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment. She states that balancing the gravity of the crime to the severity of the sentence, the sentence is disproportional. Youngbear claims the sentence in patently unfair because out of an altercation where numerous people were involved, she received the most severe sentence, although she was also the one who was most seriously injured.

Our review of this constitutional issue is de novo. *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012). "If the sentence does not create an inference of gross disproportionality, then 'no further analysis is necessary.'" *Id.* at 650 (citation omitted). "Our principal task at this stage is to 'balanc[e] the gravity of the crime against the severity of the sentence.'" *Id.* (citing *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009)). "[I]t is rare that a sentence will be so grossly

disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Id.* Also, we give substantial deference to the legislature in establishing penalties for various crimes. *Id.*

Youngbear has not shown her sentence is grossly disproportionate to the severity of her crimes. Youngbear entered an occupied home without permission, then caused injuries to two of the residents of the home by striking them with a wrench. The fact that she was also injured is not a mitigating circumstance. We conclude she has not shown her sentence constitutes cruel and unusual punishment.

We affirm Youngbear's convictions and sentence.

**AFFIRMED.**